IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


MICHAEL BAILEY,                          :

    Plaintiff,                        :
                                              Case No. 3:08cv121
    vs.                               :
                                        JUDGE WALTER HERBERT RICE

PHILLIP BELCHER, et al.,                 :

    Defendants.                       :

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY
JUDGMENT FILED BY DEFENDANT CITY OF SPRINGFIELD (DOC. #44);
DECISION AND ENTRY SUSTAINING MOTION FOR PARTIAL
SUMMARY JUDGMENT FILED BY DEFENDANTS PHILLIP BELCHER
AND NEAL DAVIS (DOC. #45); DECISION AND ENTRY SUSTAINING
MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT GENE
KELLY (DOC. #47)

---

       Plaintiff Michael Bailey ("Plaintiff" or "Bailey") brings this litigation against the City of Springfield ("Springfield"); two police officers employed by Springfield, Phillip Belcher ("Belcher") and Neal Davis ("Davis"); and Gene Kelly ("Kelly"), the Sheriff of Clark County, Ohio.  Belcher and Davis have been sued in their individual and official capacities, while Kelly has been sued only in his official capacity.

       This litigation stems from incidents that occurred on or about April 3, 2007. On that date, Plaintiff was at McMurray's, a bar located in Springfield.  When he left that establishment, he had a confrontation with a number of police officers

employed by Springfield, including Belcher and Davis. The Plaintiff was ultimately seized by the officers and transported to the Clark County Jail. Bailey contends that Belcher and Davis used excessive force to seize him, in violation of the Fourth Amendment, and that they, along with a number of unidentified employees of the Clark County Sheriffs Department, were deliberately indifferent to his serious medical condition, in violation of the Due Process Clause of the Fourteenth Amendment.

In his Second Amended Complaint (Doc. #36), Plaintiff has set forth six claims for relief, to wit: 1) a common law claim of assault and battery against Belcher and Davis (First Claim for Relief); 2) a claim under 42 U.S.C. § 1983 against Belcher and Davis, alleging that they used excessive force against him (Second Claim for Relief); 3) a claim of intentional infliction of emotional distress under the common law of Ohio, and a claim under § 1983 of deliberate indifference to medical needs against Kelly, Belcher and Davis, alleging that they failed to provide medical care to him, after Belcher and Davis used excessive force on him (Third Claim for Relief); 4) a claim of loss of consortium against Belcher and Davis, alleging that the officers' use of excessive force impaired his "parent child" relationship with his Grandfather and Grandmother, who had raised him (Fourth Claim for Relief); 5) a claim against Springfield, alleging that it is vicariously liable for the actions of Belcher and Davis (Fifth Claim for Relief); and 6) a claim of negligence and recklessness against all Defendants, predicated upon the alleged use of excessive force and the deliberate indifference to his serious medical condition.

This case is now before the Court on Springfield's Motion for Summary Judgment (Doc. #44), a Motion for Partial Summary Judgment (Doc. #45) filed by Belcher and Davis and Kelly's Motion for Summary Judgment (Doc. #47). As a means of analysis, the Court will initially review the procedural standards it must apply whenever it rules on a motion seeking summary judgment, partial or otherwise, following which it will turn to the parties' arguments in favor of the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to

resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992)

(citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As indicated, three motions for summary or partial summary judgment are pending. As a means of analysis, the Court will initially rule on the motion filed by

Belcher and Davis, following which it will turn to the motions filed by Springfield and Kelly, discussing these latter two together.

I.  Belcher's and Davis' Motion for Partial Summary Judgment (Doc. #45)

Belcher and Davis seek summary judgment on only two discrete issues, to wit: 1) Plaintiff's official capacity claims against them; and 2) Plaintiff's negligence claims.  The Court discusses those in the above order.

Plaintiff has asserted official capacity claims against Belcher and Davis, arising under both federal and state law.  With respect to his federal, official capacity claims against those Defendants, it is well-settled that a claim against an officer or employee of a governmental entity, in his or her official capacity, is a claim against the governmental entity itself.  See e.g., Kentucky v. Graham, 473 U.S. 159 (1985).  Thus, in E.J. v. Hamilton County, Ohio, 707 F. Supp. 314, 318-19 (S.D.Ohio 1989), Judge Rubin dismissed the official capacity claims against the Hamilton County Commissioners, since Hamilton County itself was a party, making the official capacity claims redundant.  Accord Amanda Cabaniss, Administrator of the Estate of Kevin Cabaniss, 497 F. Supp.2d 862, 880 (S.D.Ohio 2006), affirmed, 231 Fed. Appx. 407 (6th Cir. 2007).  Similarly, herein, Belcher's and Davis' municipal employer, Springfield, is a Defendant in this litigation.  Therefore, official capacity claims against Belcher and Davis are redundant, and the Court sustains their Motion for Summary Judgment (Doc. #45), as it relates to Plaintiff's federal, official capacity claims against them.

In accordance with Ohio's Political Subdivision Tort Immunity Act, Chapter 2744 of the Ohio Revised Code, Ohio courts have also held that a suit against a

governmental employee in his or her official capacity is a suit against the governmental employer itself. Miller v. Van Wert Cty. Bd. of Mental Retardation and Developmental Disabilities, 2009 WL 3068807 Ohio App. 2009); Smitek v. Peaco, 1993 WL 20995 (Ohio App. 1993). Accord Warner v. Wood Cty. Sheriff's Dept., 2008 WL 4449450 (N.D.Ohio 2008); Smeal ex rel. Smeal v. Alexander, 2006 WL 3469637 (N.D.Ohio 2006). Accordingly, this Court concludes that the presence of Springfield as a Defendant in this action renders Plaintiff's state law, official capacity claims against Belcher and Davis redundant, just as that presence renders Plaintiff's federal law, official capacity claims against them redundant.

Consequently, the Court sustains the Belcher's and Davis' Motion for Partial Summary Judgment (Doc. #45), as it relates to the Plaintiff's official capacity claims under both federal and state law.

As indicated, Belcher and Davis also request summary judgment on Plaintiff's state law negligence claim. That request is based upon § 2744.03(A)(6) of the Ohio Revised Code, which provides in relevant part:[1]

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>    *      *      *

---

[1]Sub-paragraphs (a) and (c) to § 2744.03(A)(6) provide, respectively, that an employee is not immune when he or she acts manifestly outside the scope of his or her employment and that an employee is not immune when civil liability is expressly imposed upon him or her by another provision of the Ohio Revised Code. Plaintiff does not argue that Belcher and/or Davis acted manifestly outside the scope of his employment on April 3, 2007. In addition, Plaintiff has not pointed to another provision in the Ohio Revised Code which expressly imposes liability on Belcher and Davis for their alleged negligence. Therefore, those two Defendants cannot be held liable for negligence under § 2744.03(A)(6)(a) and/or (c).

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section …, the employee is immune from liability unless one of the following applies:
>
>     \*        \*        \*
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner ….

Since negligence is not one of the exceptions to immunity set forth in § 2744.03(A)(6), this Court agrees with Belcher and Davis that they are immune from liability for negligence claims and cannot, as a result, be held liable for Plaintiff's state law claims under a negligence theory.

Based upon the foregoing, the Court sustains the Motion for Partial Summary Judgment (Doc. #45) filed by Belcher and Davis. As a consequence of this ruling, Plaintiff's official capacity claims, under both federal and state law, against Belcher and Davis, and his state law negligence claims against those two Defendants are dismissed. This ruling does not affect Plaintiff's individual capacity claims against Belcher and Davis, other than his state law claims based upon negligence, which remain in this litigation.

## II. Springfield's Motion for Summary Judgment (Doc. #44) and Kelly's Motion for Summary Judgment (Doc. #47)

As is indicated above, Kelly has been sued solely in his official capacity. Therefore, Plaintiff's claims against Kelly are in reality claims against Clark County. In other words, Plaintiff seeks to impose liability on Springfield and Kelly due to their status as employers. Both of those Defendants argue that they are entitled to summary judgment on all Bailey's claims against them. As a means of analysis, the Court will initially address the parties' arguments concerning the Plaintiff's

federal law claims against Springfield and Kelly, following which it will turn to their arguments pertaining to his state law claims.

A. Plaintiff's Federal Law Claims Against Springfield and Kelly

It is axiomatic that a governmental employer cannot be held liable under § 1983 for the constitutional tort committed by an employee under a theory of respondeat superior. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 691 (1978). Rather, such liability can imposed on a governmental employer, only if the plaintiff establishes that the constitutional deprivation was caused by the execution of a policy or custom of the governmental entity. Id. at 694. The Sixth Circuit has acknowledged that there are four avenues a plaintiff can take to establish a governmental employer's policy or custom, to wit: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir.) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)), cert. denied, 546 U.S. 814 (2005).

Herein, the Plaintiff does not contend that the constitutional deprivations upon which he bases his federal claims were caused by legislative enactments or official agency policies of Springfield and/or Clark County, for which Kelly is a proxy, given that he has been sued only in his official capacity. Nor is this litigation predicated upon actions by officials with the final decision-making authority. Consequently, neither the first nor the second avenues identified above

serves as the basis of imposing liability upon either Springfield or Kelly. As to the third and fourth avenues, the Court will discuss Plaintiff's arguments concerning Springfield and Kelly separately, turning first to those directed against Springfield.

The Plaintiff argues that Springfield is liable for the actions of Belcher and Davis, because seven officers were involved in his (Bailey's) seizure, which raises an inference that Springfield failed to train its police officers in the proper method of securing a suspect in custody. See Doc. #49 at 10-11. In Slusher v. Carson, 540 F.3d 449 (6th Cir. 2008), the Sixth Circuit explained what a plaintiff must show in order to establish that a governmental employer is liable for its employee's constitutional deprivation under a failure to train theory:

> The inadequacy of police training only serves as a basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." [City of Canton v.] Harris, 489 U.S. [378, 388 (1989)] (emphasis added). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" St. John v. Hickey, 411 F.3d 762, 776 (6th Cir. 2005) (quoting Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005)); see also Miller v. Calhoun County, 408 F.3d 803, 816 (6th Cir. 2005) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails).

Id. at 457.

Based upon Slusher, this Court concludes that the participation by seven officers in the seizure of Bailey is not sufficient to raise a genuine issue of material

fact as to whether liability can be imposed upon Springfield for Belcher's and Davis' alleged deprivation of the Plaintiff's constitutional rights.[2]

Moreover, to the extent that Plaintiff claims that the incident occurring on April 3, 2007, is, in and of itself, sufficient to raise a genuine issue of material fact as to whether Springfield can be held liable under the fourth avenue (a custom of tolerance or acquiescence to employees' constitutional torts), because seven officers were involved, the Court rejects same. In Peet v. City of Detroit, 502 F.3d 557 (6th Cir. 2007), cert. denied, 128 S.Ct. 2340 (2008), the Sixth Circuit rejected the argument that a few instances of misconduct by police officers was sufficient to raise a genuine issue of material fact under the fourth avenue, writing:

> A custom or policy [of tolerance or acquiescence] must be shown by "a clear and persistent pattern," and three discrete instances in one investigation is simply not enough to reasonably draw such a conclusion. See Thomas, 398 F.3d at 432. Just as this court held in Thomas that no reasonable juror could "infer a municipal-wide policy based solely on one instance of potential misconduct," id., no reasonable juror could infer such a custom or policy based on a mere three instances that are limited to one police investigation.

Id. at 568. Herein, the Plaintiff has cited only the incident involving him, which, in accordance with Peet, is not sufficient to raise a genuine issue of material fact on the fourth avenue.

The sum total of Plaintiff's argument that liability can be imposed upon Kelly is set forth in the following:

> Defendant Kelly also asserts that Plaintiff's pleading for withholding medical attention fails for want of a policy that Plaintiff can point to as being violated. And as a matter of law because there is no evidence that either Defendant Kelly or his office attempted to pervert any policy or failed to

---

[2]Plaintiff has not cited any other instance in which it was alleged that the failure to a Springfield police officer caused the officer to deprive another of his constitutional rights.

> follow any policy Defendant cannot be liable in this case. To the contrary, as set forth above in the arguments in support of their malicious prosecution claim, Plaintiffs have met the elements necessary to establish a claim for lack of medical attention, and a request for same to the finger printing guard, a deputy sheriff.
>
> Contrary to Defendant's assertions, Plaintiff has shown that Defendants had malice, animus, and/or an ulterior purpose for their actions. Thus, everything that occurred as a result of Bailey's beating, the incarceration without treatment, the pepper spraying requiring medical treatment, preclude summary judgment on his claim of denial of medical treatment.

Doc. #49 at 12.[3] Quite simply, the Plaintiff's argument in that regard does not cause this Court to conclude a genuine issue of material fact exists on the question of whether Kelly, in his official capacity, can be held liable for the alleged deliberate indifference to Bailey's serious medical condition by employees of the Clark County Sheriff's Department.

Based upon the foregoing, the Court concludes that Springfield and Kelly are entitled to summary judgment of Plaintiff's federal law claims.

B. Plaintiff's State Law Claims Against Springfield and Kelly

Springfield and Kelly argue that they are immune from Plaintiff's state law claim in accordance with the provisions of Chapter 2744 of the Ohio Revised Code.[4] Ohio courts decide whether a political subdivision, such as Springfield or

---

[3]The Plaintiff has not set forth a claim of malicious prosecution, nor did he discuss such a claim in his memorandum opposing the Defendants' motions seeking summary judgment.

[4]Ohio courts have recognized that an employee of a political subdivision, sued in his or her official capacity, enjoys the same immunities as the political subdivision which employs him or her. See e.g., Miller v. Van Wert Cty. Bd. of Mental Retardation and Developmental Disabilities, supra.

Clark County,[5] is immune from suit by applying a three-tiered test. Cater v. City of Cleveland, 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614 (1998). Under the first tier, the general rule is that, in accordance with § 2744.02(A)(1), political subdivisions "are not liable in damages for the personal injuries or death of a person." Id. at 28, 697 N.E.2d at 614. Section 2744.02(A)(1) provides:

> (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Of course, the express language of § 2744.02(A)(1) provides that the immunity afforded by that statute is subject to certain exceptions. Thus, the second tier of the analytical process is whether one of the five exceptions set forth in § 2744.02(B) abrogates that immunity. Cater, 87 Ohio St.3d at 28, 697 N.E.2d at 615.[6]

> Section 2744.02(B) provides:
>
> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

---

[5]It bears emphasis that Kelly is merely a proxy for Clark County, given that he has been sued only in his official capacity.

[6]If the immunity has been abrogated by an exception set forth in § 2744.02(B), the third tier of analysis is whether it is reinstated by one of the defenses contained in § 2744.03. Cater, 87 Ohio St.3d at 28, 697 N.E.2d at 615. Herein, since the Court concludes that none of the exceptions to immunity contained in § 2744.02(B) is applicable, it is not necessary to consider whether Springfield's and/or Kelly's immunity has been restored by § 2744.03.

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

> (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;
>
> (b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;
>
> (c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention,

workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

Based on the following, the Court concludes that none of those exceptions is applicable herein. Therefore, Springfield and Kelly remain immune from the Plaintiff's state law claims.

Given that the Plaintiff's claims do not arise out of the operation of a motor vehicle, the exception to immunity set forth in § 2744.02(B)(1) is inapplicable. The Plaintiff concedes that this litigation arises out of a governmental function. See Doc. #49 at 8. Therefore, the exception contained in § 2744.02(B)(2) does not apply. The Plaintiff concedes that the exceptions provided by § 2744.02(B)(3) and (4), respectively for the negligent failure to keep roads in repair and free from obstructions and for the negligent failure to maintain governmental buildings other than jails and other detention facilities, are inapplicable. Id. The fifth and final exception to immunity, § 2744.02(B)(5), is for instances where liability is expressly imposed on a political subdivision by another provision in the Ohio Revised Code. Plaintiff has not suggested that such a statutory provision exists, although he does

point to § 2744.03(A)(6), under which liability can be imposed upon Belcher and Davis for their alleged reckless behavior.[7] Id. at 8-9.

Accordingly, the Court concludes that Springfield and Kelly are entitled to immunity from Plaintiff's state law claims and that, therefore, they are entitled to summary judgment on those claims.

Based upon the foregoing, the Court sustains the Motions for Summary Judgment filed by Springfield (Doc. #44) and Kelly (Doc. #47), in their entirety.

As a result of the Court's rulings herein, all of Plaintiff's claims against Belcher and Davis in their individual capacities, save and except Bailey's state law claim based upon negligence, remain to be resolved in this litigation. Those claims are federal claims under § 1983 predicated upon the alleged use of excessive force and deliberate indifference to Plaintiff's medical needs by the two officers, and state law claims of assault and battery, intentional infliction of emotional distress, loss of consortium and recklessness.

January 8, 2010

                                             /s/ Walter Herbert Rice
                                              WALTER HERBERT RICE, JUDGE
                                              UNITED STATES DISTRICT COURT

---

[7] It bears emphasis that § 2744.03(A)(6) is not a vehicle for imposing liability on political subdivisions.

Copies to:

Counsel of Record.